UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RALPH NADER,

    Plaintiff,

v.

COMMISSION ON PRESIDENTAL DEBATES, PAUL G. KIRK, JR., FRANK J. FAHRENKOPF, JR., JOHN VEZERIS, and SGT CHARLES MCPHAIL, in his individual capacity,

    Defendants.

CIVIL ACTION NO.

**00-12145RGS**

## COMPLAINT

1.     Ralph Nader, the Green Party candidate for the Office of President of the United States, brings this action for violations of his civil rights and constitutional rights under state and federal law against the Commission on Presidential Debates ("Commission") and its agents acting in coordination with Massachusetts State Police. Defendants unlawfully excluded plaintiff Nader from the site of the October 3, 2000 presidential debate, sponsored by the Commission, which event was purportedly a "non-partisan" "get out the vote" effort.

2.     Defendants used the threat of arrest, intimidation and coercion to exclude Mr. Nader. Mr. Nader was treated differently from all others in violation of his rights to free association, free speech and equal protection under the law because of his political positions, his affiliation with the Green Party, his criticism of the Commission and of the Democratic and Republican parties, their candidates and their corporate sponsorships, and because of his public positions that are contrary to the two Party message being conveyed by the Commission and its agents. The defendants' conduct violates federal civil rights law and the Massachusetts Civil Rights Act.

## JURISDICTION

3. This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on 28 U.S.C. 1331 and 1343. Plaintiff also invokes the pendent jurisdiction of this Court to hear and decide claims arising under Massachusetts law.

## PARTIES

4. Plaintiff Ralph Nader is a resident of the State of Connecticut. He is the Green Party candidate for the Office of President of the United States.

5. The Commission on Presidential Debates ("Commission") is a private corporation incorporated in the District of Columbia. The Commission is significantly funded by private corporations and it sponsors the national debates between presidential candidates, but only those who meet its criteria for participation in the debates.

6. Defendants Paul G. Kirk, Jr. and Frank J. Fahrenkopf, Jr are the co-chairmen of the Commission. Upon information and belief, Defendant Kirk is a resident of the District of Columbia. Upon information and belief, Defendant Fahrenkopf is a resident of the District of Columbia.

7. Upon information and belief, John Vezeris was at all times relevant to this complaint an agent of the Commission. Mr. Vezeris was a security consultant for the Commission.

8. Sergeant Charles McPhail is a Massachusetts State police officer. He is sued in his individual capacity.


## FACTS

9.  The Commission scheduled three presidential debates for presidential election 2000. The Commission claims an exemption from federal laws that prohibit private corporations from making donations to presidential candidates on the grounds that its presidential debates are a "non-partisan" activity designed to "get out the vote" and are allowed as such pursuant to federal regulations.

10. As the Green Party candidate for President of the United States, Mr. Nader has criticized the Commission for only permitting candidates from the two major political parties to participate in the debates. Mr. Nader is also one of the plaintiffs in a suit against the Federal Election Commission challenging the legality of the agency's regulations permitting the Commission's corporate sponsorship of the debates through the use of Commission and other corporate donations.

11. On October 3, 2000, the Commission held its first of three debates in Boston, Massachusetts on the campus of the University of Massachusetts ("UMass"), a state university. The debate was in the Clark Athletic Center.

12. People were allowed to view the debate live in the same room as the Democratic and Republican candidates by invitation only. Social Security numbers were taken and security checks were allegedly performed for those individuals who were to be in this room.

13. The University of Massachusetts issued freely transferable tickets to view the debate on a televised feed in the Lipke Auditorium, located in the Science Center on the campus.

14. Mr. Nader had a ticket to the event at the Lipke Auditorium where he planned to view the debate and then to appear as a guest on the Fox News Channel to comment on the debate on a live broadcast from a trailer located at the debate site.

15. Although the Commission's debate was ostensibly "non-partisan" and designed to "get out the vote," when Green Party Candidate Ralph Nader arrived at the University of Massachusetts campus with his ticket, he was confronted by four persons: John Vezeris who stated that he worked as a security consultant for the Commission, Massachusetts State Trooper Sgt. Charles McPhail and two other uniformed state police troopers.

16. Mr. Vezeris identified himself orally only after Plaintiff requested his name. Mr. Vezaris said three times that he was "instructed by the Commission" to advise Mr. Nader that "it's already been decided that, whether or not you have a ticket, you are not invited."

17. Defendant McPhail, in the presence of the other two police officers, threatened to arrest Mr. Nader if he remained on the premises. Mr. Nader had just disembarked from a shuttle bus from the subway with other passengers some of whom had tickets to the same event as Mr. Nader. Mr. Nader was standing on the open asphalt area where the shuttle bus stopped on campus in the debate site area. He was the only person confronted by the defendants and told he had to leave or face arrest. Mr. Nader was prohibited by the defendants from viewing the debates in the Lipke Auditorium on television.

18. Mr. Nader had also been invited by Fox News Chief Executive Roger Ailes to go to the Fox news trailer on the UMass campus where he was to respond to questions and comments on the debate after its conclusion for a television broadcast.

19. When plaintiff tried to go to the Fox News trailer for the pre-scheduled television appearance, he was stopped a second time by Sgt. McPhail and the other two police officers. These police officers refused to permit Mr. Nader to enter the area and again threatened to arrest him if he did not leave the area. Mr. Nader departed without further incident.

20. Defendant Kirk told a reporter that a decision had been made to prohibit Mr. Nader from entering the debate area to avoid "disruption or distraction." Kirk claimed that Mr. Nader was a "point man for the protests."

21. Mr. Nader did not seek entry into the room where the actual debate was taking place nor was he involved in any protests.

22. There was no reason to believe that Mr. Nader would be disruptive.

23. A large number of aggressive, partisan union members were outside the debate hall holding banners supporting the Democratic Party Candidate Al Gore.

24. Upon information and belief, union representatives were permitted on the campus despite the protesters.

25. A ticket to view the debate in the separate auditorium was sufficient to permit any person to enter the University of Massachusetts campus except for Mr. Nader and any others appearing on the Commission's exclusion list.

26. The Commission and, specifically, upon information and belief, defendants Kirk and Fahrenkopf, made the decision to prevent Mr. Nader from entering the campus of the UMass. Defendants Vezeris and McPhail along with the two other police officers were enforcing a policy of the Commission to exclude Mr. Nader from the campus debate area.

27. Mr. Nader was excluded from the UMass campus in part because of his affiliation with the Green Party and his expression of his views. Mr. Nader criticized the Commission for limiting the debates to candidates from the Democratic and Republican parties. Mr. Nader publicly and legally challenged the Commission's corporate contributions to the Democratic and Republican candidates through the sponsorship of the debates that gave a national platform to Al Gore and George W. Bush to solicit the votes of millions of voters. Mr. Nader also has criticized the candidates from the Democratic and Republican parties. His exclusion from the campus debate site is inconsistent with the Commission's claim that the debates were "non-partisan" and merely a "get out the vote" effort.

28. As a result of this incident, Mr. Nader was unable to view the debate along with other interested voters on the debate site, was unable to provide live commentary on the debate on Fox News at the debate site, and was unable to speak or be interviewed by any of the other reportedly 1,700 print and broadcast journalists at the debate site during or immediately after the debate. Plaintiff was therefore unable to present his views as the Green Party candidate to television and other media viewers immediately after the debate when viewership was at its height, and he was prevented

from presenting his views to the 1,700 journalists from around the world who were at the debate site. The denial of access to voters and journalists in this manner damaged Mr. Nader by denying him access to the media coverage he otherwise would have gotten, denied him potential votes, and caused him to spend additional monies for advertising and travel and additional personal and staff time seeking to get his views out to voters.

### COUNT ONE: M.G.L. C. 12, §11I

29. The above paragraphs are incorporated by reference.

30. Defendant Vezeris instructed Sgt. McPhail and the other two police officers to use their police power to prevent plaintiff from entering the campus of the University of Massachusetts, from using his ticket to view the debate with other voters on the debate area and from making contact with the media in the debate area.

31. Defendant Vezeris was acting on instruction of the Commission and, upon information and belief, defendants Kirk and Fahrenkopf.

32. The defendants acted jointly to use threats, intimidation and coercion to prevent Mr. Nader from entering the campus of the University of Massachusetts and the debate area.

33. The Massachusetts Civil Rights Act permits a civil action against any person "whether or not acting under color of law, interfere(s) by threats, intimidation or coercion, or attempt(s) to interfere by threats, intimidation or coercion with the exercise or enjoyment by any person. . . of rights secured by the constitution or laws of the United States" or of the Commonwealth of Massachusetts.

34. By means of threats, intimidation and coercion, defendants prohibited Mr. Nader from entering the debate site in violation of his rights to free association and freedom of speech under the Articles 16 and 19 of the Massachusetts Declaration of Rights and the First Amendment of the United States Constitution. Defendants also violated Mr. Nader's rights under the Fourteenth Amendment of the Constitution to equal protection of the laws by treating Mr. Nader differently from all others because of his political beliefs, his affiliation with the Green Party, his criticism of the Commission and of the Democratic and Republican parties, their candidates and their corporate sponsorship, and because of his public positions that are contrary to the two Party message being conveyed by the Commission and its agents. This conduct violated the Massachusetts Civil Rights Act.

35. As a direct and proximate result of this conduct, plaintiff suffered the damages described above.

## COUNT TWO: 42 U.S.C. §1983

36. The above paragraphs are incorporated by reference.

37. Section 1983 provides a civil remedy for violation of constitutional rights by those acting under color of law.

38. At all times relevant to this complaint, defendant McPhail was acting under color of the laws of the Commonwealth of Massachusetts.

39. Upon information and belief, Mr. Vezeris acted as a security consultant for the Commission. Defendant Vezeris worked jointly with the Massachusetts State Police Department and Sgt. McPhail and the other two police officers to devise a plan to exclude Mr. Nader from the debate site.

40. Defendants Vezeris, Kirk and Fahrenkopf asserted improper influence over Sgt. McPhail and the other two police officers to use their police powers unlawfully to exclude Mr. Nader from the debate area despite the fact that he held a valid ticket. This exclusion was due to Mr. Nader's political beliefs, his affiliation with the Green Party, his criticism of the Commission and of the Democratic and Republican parties, their candidates and their corporate sponsorship, and because of his public positions that are contrary to the two Party message being conveyed by the Commission and its agents. These actions are therefore actionable as a matter of federal law.

41. Defendants Commission, Vezeris, Kirk and Fahrenkopf as private parties engaged in joint action with State officials; therefore their conduct was under color of law. <u>Wagenmann v. Adams</u>, 829 F.2d 196 (1st Cir. 1987)

42. By the actions described above, the defendants deprived the plaintiff of clearly established rights guaranteed by the Constitution of the United States and by the Massachusetts Declaration of Rights, including the First Amendment right to free speech and freedom of association and the right under the Fourteenth Amendment to equal protection of law.

43. As a direct and proximate result of this conduct, plaintiff suffered the damages described above.

**WHEREFORE**, the plaintiff requests that this Honorable Court:

1. Award compensatory and punitive damages;

2. Award the costs of this action, including reasonable attorney's fees to the plaintiff; and

3. Award such other and further relief as this Court may deem necessary and appropriate, including any injunctive relief that may be appropriate.

### JURY DEMAND

A jury trial is hereby demanded.

Respectfully Submitted,

Ralph Nader,
by his attorneys,

*/s/ Howard Friedman/*

**Law Offices of Howard Friedman**
Howard Friedman, BBO # 180080
Myong J. Joun, BBO # 645099
90 Canal Street, 5th Floor
Boston, MA  02114
(617) 742-4100

*/s/ Jason B. Adkins/*

**Adkins, Kelston & Zavez, P.C.**
Jason B. Adkins, BBO # 558560
David L. Kelston, BBO # 267310
90 Canal Street, 5th Floor
Boston, MA  02114
(617) 367-1040