UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RALPH NADER, )<br><br>         Plaintiff, )<br><br>v. )<br><br>COMMISSION ON PRESIDENTIAL )<br>DEBATES, PAUL G. KIRK, JR., )<br>FRANK J. FAHRENKOPF, JR., )<br>JOHN VEZERIS, and SGT CHARLES )<br>MCPHAIL, in his individual capacity, )<br><br>         Defendants. ) | CIVIL ACTION NO. 00-12145-WGY |

## AMENDED COMPLAINT

## INTRODUCTION

1.     Ralph Nader, the Green Party candidate for the Office of President of the United States, brings this action for violations of his civil rights and constitutional rights under state and federal law against the Commission on Presidential Debates ("Commission") and its agents acting in coordination with Massachusetts State Police. Defendants unlawfully excluded Mr. Nader from the site of the October 3, 2000 presidential debate, sponsored by the Commission, which event was purportedly a "non-partisan" "get out the vote" effort.

1



43

2.    Defendants used the threat of arrest, intimidation and coercion to exclude Mr. Nader. He was treated differently from all others in violation of his rights to free association, free speech and equal protection under the law because of his political positions, his affiliation with the Green Party, his criticism of the Commission and of the Democratic and Republican parties, their candidates and their corporate sponsorships, and because of his public positions that are contrary to the two-party message being conveyed by the Commission and its agents. The defendants' conduct violates federal civil rights law and the Massachusetts Civil Rights Act.

**JURISDICTION**

3.    This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on 28 U.S.C. 1331 and 1343. Plaintiff also invokes the pendent jurisdiction of this Court to hear and decide claims arising under Massachusetts law.

**PARTIES**

4.    Plaintiff Ralph Nader is domiciled in the State of Connecticut. He was the Green Party candidate for the Office of President of the United States in the year 2000.

5.    The Commission on Presidential Debates is a private corporation incorporated in the District of Columbia. The Commission is significantly funded by private corporations and it sponsors the national debates between presidential candidates, but only those who meet its criteria for participation in the debates.

2

6. Defendants Paul G. Kirk, Jr. and Frank J. Fahrenkopf, Jr. are the co-chairmen of the Commission. Upon information and belief, Defendant Kirk is a resident of the District of Columbia. Upon information and belief, Defendant Fahrenkopf is a resident of the District of Columbia.

7. Upon information and belief, defendant John Vezeris was at all times relevant to this complaint an agent of the Commission. Mr. Vezeris was hired as a security consultant by the Commission.

8. Sergeant Charles McPhail is a Massachusetts State police officer. He is sued in his individual capacity.

FACTS

9. The Commission scheduled three presidential debates for presidential election 2000. The Commission claims an exemption from federal laws that prohibit private corporations from making donations to presidential candidates on the grounds that its presidential debates are a "non-partisan" activity designed to "get out the vote" and are allowed as such pursuant to federal regulations.

10. As the Green Party candidate for President of the United States, Mr. Nader has criticized the Commission for only permitting candidates from the two major political parties to participate in the debates. Mr. Nader was also one of the plaintiffs in a suit against the Federal Election Commission challenging the legality of the agency's regulations permitting the Commission's corporate sponsorship of the debates through the use of Commission and other corporate donations.

11.    On October 3, 2000, the Commission held its first of three debates in Boston, Massachusetts on the campus of the University of Massachusetts ("UMass"), a state university.  The actual debate was in the Clark Athletic Center.

12.    People were allowed to view the debate live in the same room as the Democratic and Republican candidates by invitation.  Social Security numbers were taken and security checks were allegedly performed for those individuals who were to be in this room.

13.    UMass issued freely transferable tickets to view the debate on a televised feed in a separate room, the Lipke Auditorium, which is located in the Science Center on the UMass campus.  Any person holding a ticket to the Lipke event was permitted to enter the UMass campus.

14.    Mr. Nader had a ticket to the event at the Lipke Auditorium where he planned to view the televised feed of the debate.  Then he planned to appear as a guest on the Fox News Channel from the UMass campus to provide commentary on the debate after its conclusion.

15.    Mr. Nader had been invited by Fox News Chief Executive Roger Ailes to go to the Fox news trailer on the UMass campus where he was to respond to questions and comments on the debate for a live television broadcast.

16.    Mr. Nader went to the UMass campus in his capacity as the Green Party candidate for President of the United States to publicize his views and candidacy.

4

17.    Just after he had disembarked from a shuttle bus from the subway Mr. Nader was confronted by four persons: John Vezeris, who stated that he worked as a security consultant for the Commission; Massachusetts State Trooper Sgt. Charles McPhail and two other uniformed state police troopers. The plaintiff was standing on the open asphalt area in a parking lot where the shuttle bus stopped on campus when this confrontation occurred.

18.    Mr. Nader showed his ticket to Mr. Vezeris.   Mr. Vezeris said three times that he was "instructed by the Commission" to advise Mr. Nader that "it's already been decided that, whether or not you have a ticket, you are not invited."

19.    Immediately after Vezeris spoke, defendant McPhail, in the presence of the other two police officers, threatened to arrest Mr. Nader if he remained on the UMass campus.

20.    Mr. Nader was the only person confronted by the defendants and told he had to leave or face arrest.  No one confronted or questioned the other passengers on the same shuttle bus.  Mr. Nader was prohibited by the defendants from viewing the televised feed of the debate in the Lipke Auditorium.

21.    Defendant Vezeris worked jointly with the Massachusetts State Police Department, Sgt. McPhail and the other two police officers to devise a plan to exclude Mr. Nader from the UMass campus.

22.    Defendant Vezeris was acting on instruction of the Commission and, upon information and belief, defendants Kirk and Fahrenkopf.

23.     Plaintiff left the campus on a shuttle bus and went to a bus shelter. Then he called Fox News. Fox News invited the plaintiff to view the debate from their trailer so he would be able to comment immediately afterwards. When plaintiff returned to the campus on a shuttle bus and tried to go to the Fox News trailer, he was stopped a second time by Sgt. McPhail and the other two police officers. A representative of Fox News came out to greet Mr. Nader and take him to the trailer. However, Sgt. McPhail and the other police officers refused to permit Mr. Nader to enter the UMass campus and again threatened to arrest him if he did not leave. Mr. Nader departed without further incident.

24.     Unlike Mr. Nader, other public figures who were invited by news organizations to comment on the debate after it ended were allowed to enter the UMass campus to go to the news trailers.

25.     Defendant Kirk told a reporter that a decision had been made to prohibit Mr. Nader from entering the UMass campus to avoid "disruption or distraction." Kirk claimed that Mr. Nader was a "point man for the protests."

26.     Mr. Nader did not seek entry into the room where the actual debate was taking place nor was he involved in any protests.

27.     There was no reason to believe that Mr. Nader would be disruptive.

28.     A large number of aggressive, partisan union members were outside the debate hall holding banners supporting the Democratic Party Candidate Al Gore. Upon

6

information and belief, union representatives were permitted on the campus despite the protesters.

29.     A ticket to view the televised feed of the debate in the separate auditorium was sufficient to permit any person to enter the UMass campus except for Mr. Nader and any others appearing on the Commission's exclusion list.

30.     The Commission and, specifically, upon information and belief, defendants Kirk and Fahrenkopf, made the decision to prevent Mr. Nader from entering the campus of UMass.  Defendants Vezeris and McPhail along with the two other police officers were enforcing a policy of the Commission to exclude Mr. Nader from the campus.

31.     Mr. Nader was excluded from the UMass campus in part because of his affiliation with the Green Party and his expression of his views.  Mr. Nader criticized the Commission for limiting the debates to candidates from the Democratic and Republican parties.  Mr. Nader publicly and legally challenged the Commission's corporate contributions to the Democratic and Republican candidates through the sponsorship of the debates that gave a national platform to Al Gore and George W. Bush to solicit the votes of millions of voters.  Mr. Nader also had criticized the candidates from the Democratic and Republican parties.  His exclusion from the campus is inconsistent with the Commission's claim that the debates were "non-partisan" and merely a "get out the vote" effort.

32.     As a result of this incident, Mr. Nader was unable to view the televised feed of the debate along with other interested voters at the Lipke Auditorium and was unable to speak or be interviewed by any of the other reportedly 1,700 print and broadcast journalists from around the world who were on the UMass campus during or immediately after the debate.  Plaintiff was therefore unable to present his views as the Green Party candidate to television and other media viewers immediately after the debate when viewership was at its height.  The denial of access to voters and journalists in this manner damaged Mr. Nader and his campaign committee by denying him access to the media coverage he otherwise would have gotten, denied him potential votes, and caused him and his campaign committee to spend additional money for advertising and travel and additional personal and staff time seeking to get his views out to voters.

33.     Mr. Nader felt humiliated by the defendants' deliberate acts to humiliate his candidacy.  He was running a credible campaign as the Green Party candidate for President of the United States.  The defendants' actions undermined Mr. Nader's stature as a presidential candidate, making him appear to be a less credible candidate.

COUNT ONE:  M.G.L. C. 12, §11I

34.     The above paragraphs are incorporated by reference.

35.     Defendant Vezeris instructed Sgt. McPhail and the other two police officers to use their police power to prevent plaintiff from entering the campus of the University of Massachusetts, from using his ticket to view the debate with other voters at the Lipke Auditorium and from making contact with the media on campus.

8

36.     Defendant Vezeris was acting on instruction of the Commission and, upon information and belief, defendants Kirk and  Fahrenkopf.

37.     The defendants acted jointly to use threats, intimidation and coercion to prevent Mr. Nader from entering the UMass campus and the Lipke Auditorium.

38.     The Massachusetts Civil Rights Act permits a civil action against any person "whether or not acting under color of law, interfere(s) by threats, intimidation or coercion, or attempt(s) to interfere by threats, intimidation or coercion with the exercise or enjoyment by any person. . . of rights secured by the constitution or laws of the United States" or of the Commonwealth of Massachusetts.

39.     By means of threats, intimidation and coercion, defendants prohibited Mr. Nader from entering the campus in violation of his rights to free association and freedom of speech under the Articles 16 and 19 of the Massachusetts Declaration of Rights and the First Amendment of the United States Constitution.

40.     Defendants also violated Mr. Nader's rights under the Fourteenth Amendment of the Constitution to equal protection of the laws by treating Mr. Nader differently from all others because of his political beliefs, his affiliation with the Green Party, his criticism of the Commission and of the Democratic and Republican parties, their candidates and their corporate sponsors, and because of his public positions that are contrary to the two-party message being conveyed by the Commission and its agents. This conduct violated the Massachusetts Civil Rights Act.

9

41.     As a direct and proximate result of this conduct, plaintiff suffered the damages described above.

**COUNT TWO: 42 U.S.C. §1983**

42.     The above paragraphs are incorporated by reference.

43.     Section 1983 provides a civil remedy for violation of constitutional rights by those acting under color of law.

44.     At all times relevant to this complaint, defendant McPhail was acting under color of the laws of the Commonwealth of Massachusetts.

45.     Upon information and belief, Mr. Vezeris was hired as a security consultant by the Commission. Defendant Vezeris worked jointly with the Massachusetts State Police Department and Sgt. McPhail and the other two police officers to devise a plan to exclude Mr. Nader from the UMass campus.

46.     Defendants Vezeris, Kirk and Fahrenkopf on behalf of the Commission asserted improper influence over Sgt. McPhail and the other two police officers to use their police powers unlawfully to exclude Mr. Nader from the campus despite the fact that he held a valid ticket. This exclusion was due to Mr. Nader's political beliefs, his affiliation with the Green Party, his criticism of the Commission and of the Democratic and Republican parties, their candidates and their corporate sponsors, and because of his public positions that are contrary to the two-party message being conveyed by the Commission and its agents. These actions are therefore actionable as a matter of federal law.

47.    Defendants Commission, Vezeris, Kirk and Fahrenkopf as private parties engaged in joint action with State officials; therefore their conduct was under color of law. Wagenmann v. Adams, 829 F.2d 196 (1st Cir. 1987).

48.    By the actions described above, the defendants deprived the plaintiff of clearly established rights guaranteed by the Constitution of the United States and by the Massachusetts Declaration of Rights, including the First Amendment right to free speech and freedom of association and the right under the Fourteenth Amendment to equal protection of law.

49.    As a direct and proximate result of this conduct, plaintiff suffered the damages described above.

**WHEREFORE** the plaintiff requests that this Honorable Court:

1.    award compensatory and punitive damages;

2.    award the costs of this action including reasonable attorney's fees to the plaintiff; and

3.    award such other and further relief as this Court may deem necessary and appropriate, including injunctive relief that may be appropriate.

## JURY DEMAND

A jury trial is hereby demanded.

Respectfully Submitted,
**RALPH NADER,**
by his attorneys,

Howard Friedman, BBO# 180080
Myong J. Joun, BBO# 645099
LAW OFFICES OF HOWARD FRIEDMAN
90 Canal Street, 5th Floor
Boston, MA  02114
(617) 742-4100

Jason B. Adkins, BBO# 558560
David L. Kelston, BBO# 267310
ADKINS, KELSTON & ZAVEZ, P.C.
90 Canal Street, 5th Floor
Boston, MA  02114
(617) 367-1040